UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
                                              :
WILLIE BUTLER,                                :
                                              :
                          Plaintiff,          :        09 Civ. 1916 (PAC) (THK)
                                              :
          - against -                         :        MEMORANDUM
                                              :        OPINION & ORDER
C.O. GONZALEZ and C.O. RICHARD,               :
                                              :
                          Defendants.         :
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: August 26, 2010

HONORABLE PAUL A. CROTTY, United States District Judge:

Pro se Plaintiff Willie Butler ("Butler"), an inmate at Sing Sing Correctional
Facility ("Sing Sing"), brings this action under 42 U.S.C. § 1983 against Correction
Officers Julio Gonzalez ("Gonzalez") and Jean Richard ("Richard") (together,
"Defendants") claiming that his Eighth Amendment right to be free from cruel and
unusual punishments was violated when Gonzalez beat him in a secluded stairwell at
Sing Sing while Richard looked on, laughed and hurled insults. Butler also claims that
Defendants violated his Eighth Amendment rights by denying him medical care after the
beating. He seeks damages and an order removing Defendants as employees of the New
York State Department of Correctional Services.

After exhausting his administrative remedies, Bulter commenced this action on
March 3, 2009. The Court referred the general pretrial matters and dispositive motions in
the case to Magistrate Judge Theodore Katz on March 15, 2009. At the conclusion of
discovery, Defendants moved for summary judgment under Rule 56 of the Federal Rules
of Civil Procedure on January 21, 2010. They argue that Butler's story, which is only
supported by his deposition testimony, is so fanciful and inconsistent that no reasonable

juror could find in his favor.  Defendants also contend that Butler's excessive force claim

fails because, even accepting his version of events as true, his injuries are de minimis.

On May 18, 2010, Magistrate Judge Katz issued a Report and Recommendation ("R&R")

recommending that the Court deny Defendants' motion for summary judgment.

Defendants moved for reconsideration on June 10, 2010, and Magistrate Judge Katz

denied the motion in an opinion and order ("Reconsideration Order") dated July 15,

2010.  Defendants submitted timely objections to the R&R on August 10, 2010.  The

Court has reviewed the R&R, the Reconsideration Order and Defendants' objections.  For

the reasons that follow, the Court adopts Magistrate Judge Katz's findings and

recommendations.  Defendants' motion for summary judgment is DENIED.[1]

---

[1] Defendants filed an Answer to the Complaint on June 23, 2009, and Butler submitted an Amended Complaint to the Pro Se Office on July 8, 2009.  Due to what appears to be an administrative error, Defendants were never served with the Amended Complaint and it was not filed on the Court's docket. Magistrate Judge Katz did, however, cite to the Amended Complaint in the R&R and the Reconsideration Order.

　　　Under the version of Rule 15(a) of the Federal Rules of Civil Procedure in effect when Butler submitted his Amended Complaint, a party was allowed to amend a pleading once "as a matter of course" prior to service of a responsive pleading.  See Fed. R. Civ. P. R. 15(a) (2007); see also Fed. R. Civ. P. 15(a)(1)(B) (2009) (as of December 1, 2009, a party may amend its pleading as a matter of course within the earlier of 21 days after service of a responsive pleading  or 21 days after service of a motion under Rule 12(b),(e) or (f)).  Under the former and current versions of Rule 15(a), after the time for amending a pleading as a matter of course has passed, a party may amend its pleading only with the opposing party's written consent or the Court's leave.  See Fed. R. Civ. P. 15(a)(2) (2007); Fed. R. Civ. P. 15(a)(2) (2009). The Court "should freely grant leave when justice so requires."  Fed. R. Civ. P. 15(a)(2) (2007); Fed. R. Civ. P. 15(a)(2) (2009).  Butler's allegations in the Amended Complaint are substantively identical to his allegations in the Complaint, and Defendants do not object to Magistrate Judge Dolinger's reliance on the Amended Complaint.  (Objections ("Obj.") at 15 n.4.)  While Butler adds new exhibits to his Amended Complaint, these exhibits appear to have been made available during discovery, and in any event, do not bear on Defendant's motion for summary judgment.  The Court accordingly construes Butler's submission of the Amended Complaint as a motion to amend, and since Defendants will not be prejudiced by allowing Butler to file the Amended Complaint, the motion is GRANTED.  The Amended Complaint is deemed filed nunc pro tunc as of July 8, 2009.  The Clerk of Court is directed to indicate the filing of the Amended Complaint on the Court's docket.  A copy of the Amended Complaint will be mailed to defense counsel along with this opinion.

**Background**

**I. Facts**[2]

**A. January 2, 2009 Incident**

Butler is incarcerated at Sing Sing, where Defendants work as corrections officers.  According to Butler's deposition testimony, he called his wife from a telephone located near the Sing Sing gym in the early evening hours of January 2, 2009.  While inmates are typically allotted 30 minutes of phone usage, a recently hired corrections officer named "Ms. Simpson" ("Simpson") told Butler that he could only use the phone for 15 minutes.  (Butler Dep. at 35-36.)  As Butler explained Sing Sing's phone policy to Simpson, Richard appeared and told Butler to stand against the wall.  After momentarily leaving the area, Richard returned with Gonzalez.

Butler testified that Richard and Gonzalez took him "outside the gate" to secluded area near the back stairwell.  Once out of Simpson's sight, Gonzalez asked Butler whether he had a "problem with Miss Officer."  (Id. at 37.)  Butler said no, and Gonzalez told him to remove his clothes and put his hands on the wall.  In both the Complaint and the Amended Complaint, Butler alleges that he "stripped naked."  (Compl. at 3; Am. Compl. at 3.)  During his deposition, however, Butler testified that he stripped down to his "boxers and T-shirt."  (Butler Dep. at 99.)  After Butler took at least some of his clothing off, Gonzalez searched him but found nothing.

As Butler was getting dressed, Gonzalez punched him in the right eye and "busted my right eyebrow wide open."  (Id. at 40.)  Bleeding from his eye, Butler fell to his knees as Gonzalez continued the attack.  According to Butler, Gonzalez repeatedly punched him with a closed fist "in the back and in the back of my head" as Richard "sat there and

---

[2] Unless otherwise noted, the facts are taken from the R&R.

3

laughed and joked at the situation." (Id. at 39.)  Rather than stop the attack, Richard told

Butler he was "acting like a little bitch" and to "talk that smart shit now." (Id. at 39;

Compl. at 3; Am. Compl. at 3.)  Butler "pleaded and begged for medical attention," but

neither officer responded.  (Butler Dep. at 39.)

      At some point during the minute long attack, an alarm went off and Gonzalez left

the area.  Richard took Butler back to his cell, where Butler asked an unidentified

prisoner to call his wife.  Butler wrote his wife's phone number and his inmate number

on a piece of paper which he tossed to the inmate through the bars of his cell.  The inmate

then called Butler's wife and told her about the attack.

      Gonzalez and Richard have not been deposed, and they have not submitted

affidavits setting forth their version of events.  Nor have Defendants submitted an

affidavit by Simpson stating what she saw near the telephones outside the gym at Sing

Sing on January 2, 2009.  Defendants do, however, deny Butler's allegations of

wrongdoing in their Answer to the Complaint.  (Ans. ¶ 3.)  They also point out that when

corrections officers use force against inmates at Sing Sing, it is recorded in a "Use of

Force logbook." (DeLoatch Dep. ¶ 5.)  The logbook does not contain an entry indicating

a "use of force incident involving inmate Butler on January 2, 2009." (Id.)

## B. Medical Treatment

      After Richard took Butler back to his cell, and over the course of the following

days, several corrections officers and other Sing Sing personnel passed by Butler's cell.

Butler called for help, but no one offered him medical assistance until four days after the

beating.  Butler testified that on January 6, 2009, he asked a female nurse passing by his

cell to look at his eye, which had "started looking real nasty." (Butler Dep. at 117.)

According to Butler, the nurse said "oh, no, you have to go," and sent him to Westchester Medical Center ("WMC") where his right eye was sutured.  (Id. at 63-63, 117.)

Records maintained at Sing Sing do not, however, indicate that Butler was transported to an outside hospital on January 6, 2009.  And there are no records at WMC reflecting that Butler visited the hospital for any reason on January 6, 2009.  Furthermore, Sing Sing's records do not indicate that Butler received sutures to his right eye at any point in January, 2009.  Sing Sing personnel explain that if an inmate receives sutures, he is confined to the infirmary when he returns from the outside hospital, but Butler was not confined to the infirmary in January, 2009.  Butler's medical records do indicate that he was evaluated by a nurse at the Sing Sing clinic for issues relating to a pre-existing heart condition on January 6, 2009.  On January 8, 2009, Butler returned to Sing Sing's clinic and received medical attention for a similar heart-related issue.  None of the records provided by Defendants pertaining to these two medical visits mention sutures or injury to Butler's eye or face.

Butler was transported from Sing Sing to the emergency room at WMC on January 11, 2009.  Butler claims that he went to WMC because "my eye busted back open, and I wanted them to look at it."  (Butler Dep. at 67.)  Defendants contend that the appointment related to a finger injury Butler suffered in a weightlifting accident, and medical records of the January 11th visit to WMC make reference to an injury to Butler's pinky finger.  During his deposition, Butler testified that his heart condition prevents him from engaging in athletic activity and that "I don't do no weights or nothing."  (Id. at 64.)  But while Butler claims that he is not permitted to engage in athletic activity, at a different point in his deposition he testified that "I work out every day."  (Id. at 50.)

According to Butler, the medical record indicating a pinky injury was altered.  (Id.)

Butler also posits that the Sing Sing doctor who treated his eye injury on January 6 and

11 – Dr. Bahski – was fired for falsifying records.  (Id. at 63.)

Putting aside Butler's pinky finger and exercise habits, when Butler was

discharged from the WMC emergency room on January 11, 2009, he received "Aftercare

Instruction."  (Madore Decl. ¶ 5; Aftercare Instructions, Jones Decl., Ex. A.)  The

Aftercare Instructions state:

> **After leaving the Emergency Department, follow the instructions below.**
> FACIAL & SCALP CONTUSIONS:
> The exam today shows a contusion (deep bruise) around the face or scalp.
> Injuries around the face and head cause a lot of swelling, especially
> around the eyes. . . . Usually the swelling from a contusion will be better
> in 2-3 days, but it takes at least 7-10 days for a "black eye" to clear up"
>
> . . .
>
> ANTI-INFLAMATORY PAIN MEDICINE:
> Your doctor has prescribed a medicine to relieve both pain and
> inflammation from your injury or illness. . . . They are used to treat many
> conditions including injuries (sprains, strains, bruises), fever, tendonitis,
> bursitis, gout attack, arthritis, and menstrual cramps
>
> . . .
>
> Take Motrin for pain as needed.  Follow up with your doctor in 1-2 weeks
> for further evaluation.  Return to the ER for worsening pain or other
> concerns.

(Aftercare Instructions at 2-3).  The Aftercare Instructions are signed by an emergency

room nurse and the attending physician, Dr. Gigi Madore ("Dr. Madore").  (Id.; Madore

Decl. ¶ 4.)

Butler received medical treatment for his heart condition and a pre-existing

cataract in his right eye throughout 2009.  Medical records for several of the

appointments mention an injury to Butler's right eye.  In an Ambulatory Health Record

Progress Note ("AHR") from a medical appointment on August 17, 2009, the doctor

wrote: "states had sutures/butterfly to R[ight] eyebrow area Jan[uary] 3 – Bahski seen

and sent O[ut] S[ide] H[ospital]."  In an AHR from a sick call on September 1, 2009, a

Sing Sing nurse wrote: "[s]ent to OSH re: R[ight] eye sutures 1/6/09 (copy of consult

<u>NOT</u> on file)."  An AHR prepared two days later states: "inmate 'very concerned re:

paperwork from OSH trip on R[ight] eye injury 1/09: <u>NOT</u> in medical records.'"

According to Defendants, these references to an eye injury are all based on

Butler's self-reporting.  Sing Sing personnel state that they have been unable to confirm

that Butler received sutures at any point in 2009.  Defendants have not, however,

submitted an affidavit from Dr. Bahski, who Butler claims treated his eye in January,

2009.  And while Defendants emphasize the absence of records maintained at Sing Sing

indicating that Butler was treated for an eye injury in January, 2009, Sing Sing's medical

referral history for Butler is not entirely consistent with his underlying medical records.

During his deposition in November, 2009, Butler testified that his right eye still

bothers him.  Butler explained that when he blinks, his right eyen "feels like something is

rubbing in it."  According to Butler, the irritation in his right eye is the result of

Gonzalez's fist, and not his cataract.

## C. Butler's Grievance

At some point soon after the incident on January 2, 2009, Butler filed a grievance

with Sing Sing against Gonzalez and Richard.  (Butler Dep. at 71.)  During Butler's

deposition, defense counsel indicated that Butler filed (or at least dated) his grievance on

January 2, 2009.  (<u>Id.</u>)  But Butler's grievance has not been submitted to the Court, and

Sing Sing's decision rejecting the grievance indicates that it was filed on January 8, 2009. (Compl., Ex. A; Am. Compl., Ex. 1-2, 4.)  Regardless of exactly when Butler filed his grievance, it was clearly filed before he went to the WMC emergency room and received the Aftercare Instructions on January 11, 2009.

After being handed a copy of his grievance during his deposition, Butler testified that "[m]y grievance is on an officer busting my eye clean open. . . . The grievance states -- read it -- I got knocked in my eye."  (Butler Dep. at 72.)  The decision rejecting Butler's grievance indicates that Defendants denied all of Butler's allegations.  (Compl. Ax. A; Am. Compl. Ex. 1.)   The decision also states that although Simpson – who despite being a woman, is referred to as "he" – was assigned to monitor the phones on January 2, 2009, "the office[r] does not recall any type of unusual situations occurring in the phone area on that evening. He states that at no time did he see any other officers act unprofessional [sic] nor did he see any type of frisk involving this or any other inmate." (Id.)

## II. Governing Law and Magistrate Judge Katz's R&R[3]

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his

---

[3] As an initial matter, Magistrate Judge Katz noted that Butler failed properly respond to Defendants' Local Rule 56.1 Statement.  (R&R at 14-17.)  Butler apparently attempted to comply with Local Rule 56.1 by submitting a document titled, "Response to Movant's Contentions There Are No Genuine Issues with Respect to Listed Materials."  But since Butler prepared this document before Defendants moved for summary judgment, it does not directly respond to the statements in Defendants' Rule 56.1 Statement.  In light of Butler's pro se status, Magistrate Judge Katz did not deem all of the claimed undisputed facts in Defendant's Rule 56.1 Statement admitted.  (Id. at 16-17.)  Instead, Magistrate Judge Katz held that "[t]o the extent that Defendants present undisputed facts relating to Sing Sing administrative and medical records, which are supported by evidence in the record, they are deemed admitted."  (R&R at 17.) Defendants do not object to this conclusion, and the Court agrees that under the circumstances Butler's failure to comply with Local Rule 56.1 is excusable.  See Jiggetts v. Diaz, No. 02 Civ. 8959(LTS)(JCF), 2009 WL 749575, at *4 (S.D.N.Y. Mar. 20, 2009) ("In light of the Plaintiff's pro se status and the fact he has proffered evidentiary material, the Court will excuse his failure to company with Rule 56.1 and will address his contentions on the merits.").

conduct, and the other objective, focusing on the conducts effect." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). The subjective component "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) (internal quotation marks omitted). "In an excessive-force case, whether conduct was 'wanton' turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Sims, 230 F.3d at 21 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

The objective component "focuses on the harm done, in light of 'contemporary standards of decency.'" Goord, 554 F.3d at 268 (quoting Hudson, 503 U.S. at 8). The question is whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson, 503 U.S. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 303 (1991)). "But when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency are always violated. . . . This is true whether or not significant injury is evident.'" Goord, 554 F.3d at 268-69 (quoting Hudson, 503 U.S. at 9). While "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* use of physical force, provided that the use of force is not of a sort 'repugnant to the conscious of mankind,'" Hudson, 503 U.S. at 9-10 (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)), "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to

escape without serious injury." Wilkins v. Gaddy, __ U.S. __, 130 S. Ct. 1175, 1178-79 (2010).

To prevail on a motion for summary judgment, "the moving party must prove that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." Williams v. Utica College of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006); Fed. R. Civ. P. 56(c). Defendants maintain that this case fits within a line of cases holding that there are no *genuine* issues of material fact for summary judgment purposes when "no rational trier of fact could find in favor of the nonmoving party." Shabazz v. Pico, 994 F. Supp. 460, 566-67 (S.D.N.Y. 1998). Defendants contend that the only evidence of the alleged assault is Butler's deposition testimony, which no rational factfinder could accept. According to Defendants, Butler's testimony is fatally undermined by the absence of a "use of force" incident report, and because Butler's medical records do not show that he received sutures in his right eye after being transported to WMC on January 6, 2009. Since the assault never occurred, Defendants conclude that Butler's excessive force claim fails as a matter of law.

Magistrate Judge Katz rejected this argument, and in doing so distinguished the line of cases Defendants offer in support. (R&R at 19-21.) He explained that the cases relied upon by Defendants "contain three material distinctions from Plaintiff's case: (1) a plaintiff whose own story was internally inconsistent and changed throughout the proceedings; (2) substantial evidence undermining or directly refuting the plaintiff's version of events; and (3) defendants who submitted affidavits or declarations categorically denying the plaintiff's version of events." (Id. at 20-21 (internal citations omitted).)

From the date he filed his grievance, and throughout the course of this lawsuit, Butler's story has been consistent in all material respect.  (Id. at 10, 22.)  Butler has always maintained that he was beaten in a secluded stairwell by Gonzalez while Richard watched, laughed and was verbally abusive.  Magistrate Judge Katz explained that while Butler's testimony "may suffer from a lack of corroboration," his testimony is nevertheless uncontroverted.  (Id. at 21.)  Defendants have not submitted affidavits setting forth their version of events, and they have not submitted affidavits by Simpson or Dr. Bahski.  Magistrate Judge Katz also explained that Butler's testimony is not wholly uncorroborated; the Aftercare Instructions given to Butler after he visited WMC on January 11, 2009 indicate "a contusion (deep bruise) around the face or scalp."  (Id. at 24.)

According to Magistrate Judge Katz, Butler's medical records "raise some obstacles" to his case.  (Id. at 23.)  But while a reasonable jury might find it difficult to accept Butler's claim that he received sutures at WMC on January 6, 2009, Magistrate Judge Katz concluded that "any inquiry into Plaintiff's credibility as to the extent of his injuries is inappropriate at this stage."  (Id. at 23.)   Defendants' argument based on the absence of a "use of force" incident report has no traction.  Magistrate Judge Katz explained that if Defendants took Butler to a secluded area and then assaulted him, "the Court would not expect these same officers to then write up an incident report documenting their impermissible use of force."  (Id. at 22.)  While noting that a jury may ultimately reject Butler's claim that he was assaulted on January 2, 2009, Magistrate Judge Katz held that "[v]iewing the facts in the light most favorable to Plaintiff, considering Plaintiff's sworn testimony, Defendants' failure to rebut Plaintiff's version of

event, and the January 11 aftercare instruction, there are genuine issues of fact that preclude summary judgment." (Id. at 25.)

Defendants also argue that Butler's excessive force claim fails because he has not shown that his injuries were more than de minimis.   This argument, according to Magistrate Judge Katz, "is misguided." (Id. at 26.)  As Magistrate Judge Katz correctly explained, to satisfy the objective component of an excessive force claim, the plaintiff need only show that the *force* used was more than de minimis. (Id.)  While in some excessive force cases, the extent of injury may be relevant in determining whether the complained of use of force was necessary, "when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency are always violated.'" Goord, 554 F.3d at 268-69.  This is true whether or not the injury sustained by the plaintiff is characterized as de minimis.  See Gaddy 130 S. Ct. at 1178-79.  Since there is a disputed question of fact as to whether Defendants used force "maliciously and sadistically to cause harm" – i.e., whether the assault occurred – Magistrate Judge Katz rejected Defendants' argument based on the extent of Butler's injury.

In addition to his excessive force claim, Butler claims that Defendants were deliberately indifferent to his serious medical needs following the January 2 assault. Since Defendants do not address Butler's deliberate indifference claim in their moving papers, Magistrate Judge Katz concluded that Defendants have not moved for summary judgment on the claim.   (R&R at 2, 11, 27.)  In any event, given Butler's undisputed testimony that he did not receive medical care for his eye until four days after the alleged assault, Magistrate Judge Katz explained that summary judgment on Butler's deliberate indifference claim would be inappropriate.  (Id. at 27.)

**III. The Reconsideration Order**

In support of the motion for reconsideration, Defendants argued that Magistrate Judge Katz erred in relying on the Aftercare Instructions as evidence corroborating Butler's testimony that he was assaulted on January 2, 2009.  Defendants also maintained that they intended to and did move for summary judgment on Butler's deliberate indifference claim, and that the motion should be granted.  In the event the motion for reconsideration was denied, Defendants asked Magistrate Judge Katz to amend the R&R to "reflect the evidence showing that the entry on the Aftercare Instructions regarding 'facial and scalp' injury was a clerical error."  (Mem. in Supp. Mot. for Reconsideration at 3 n.3.)  Magistrate Judge Katz denied both requests.

The Aftercare Instructions, which were given to Butler following his January 11, 2009 visit to the WMC emergency room, state that "[t]he exam today shows a contusion (deep bruise) around the face or scalp."  According to Defendants, they did not see the relevance of the Aftercare Instructions when they filed their motion for summary judgment, and "because defendant's moving papers did not address this passage, the Court misconstrued the meaning of the entry in the Aftercare Instructions."  (Id. at 2.)  In support, Defendants submitted the declaration of Dr. Madore, the attending physician at WMC on January 11, 2009.  Even though Dr. Madore does not claim to recall the treatment received by Butler on January 11, she asserts that WMC medical records show that Butler was treated for an injury to his pinky finger sustained during a weight lifting accident.  (Madore Decl. ¶ 4.)  Dr. Madore explains that Aftercare Instructions are computer generated, and that medical staff "select alphabetically a description closest to the medical condition(s) treated and appropriate follow up care."  (Id. ¶ 5.)  From her

review of Butler's medical records, as well as her "familiarity with the E.R. medical records systems," Dr. Madore surmises that "the references on the patients Aftercare Instructions to treatment relating to 'hand' injury were erroneously 'selected' alphabetically by medical personnel as a 'head' injury which in turn generated aftercare instructions for 'facial and scalp' contusions on the patient's Aftercare Instructions."  (Id. ¶ 7.)

Local Rule 6.3 provides that a motion for reconsideration must be supported by "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has over looked."  Local Civil Rule 6.3 of the Southern District of New York.  Since it was Defendants – not Magistrate Judge Katz – who overlooked the Aftercare Instruction, Magistrate Judge Katz held that "the Court . . . will not consider Dr. Madore's declaration."  (R&R at 9.)

Magistrate Judge Katz went on to explain, however, that Dr. Madore's declaration does not undermine his analysis of Defendants' motion for summary judgment: "Dr. Madore's declaration simply offers an explanation for a medical record that is contrary to the face of the document."  (Id. at 9.)  Magistrate Judge Katz reasoned that Dr. Madore's declaration at best creates an additional issue of fact as to whether the Aftercare Instructions were generated by mistake, or whether – consistent with Butler's testimony – the Aftercare Instructions refer to a "contusion . . . around the face or scalp" because Butler in fact had a "contusion . . . around the face or scalp."  (Id.)  Furthermore, even if Butler was not treated for an eye injury on January 11, summary judgment would still be inappropriate because Butler's testimony that he was assaulted by Defendants on January 2 is not contradicted by any admissible evidence.  According to Magistrate Judge Katz,

Butler's treatment history goes to the extent of his injuries, not to whether the attack in fact occurred.  (Id. at 10.)

Magistrate Judge Katz was not persuaded by Defendants' argument that the motion for summary judgment was meant to encompass Butler's deliberate indifference claim.  (Id. at 12.)  After pointing out that Defendants' motion papers consistently refer to "excessive force," and that no mention is made of Butler's claim that he was deprived of medical care, Magistrate Judge Katz declined to reconsider his recommendation that the Court allow Butler to proceed with his Eighth Amendment deliberate indifference to a serious medical need claim.  (Id. at 12-13.)

### Discussion

### IV. Standard of Review

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  When a timely objection has been made to the recommendations of the magistrate judge, the court is obligated to review the contested issues de novo.  Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998).  The Court may, however, "adopt those portions of the Report [and Recommendation] to which no objections have been made and which are not facially erroneous."  La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y 2000).

### V. Objections

Defendants' objections largely reiterate the same arguments rejected by Magistrate Judge Katz in the R&R and the Reconsideration Order.  First, Defendants argue that Butler's testimony regarding the treatment he received for his eye injury is so discredited by the documents of record that no reasonable juror could believe that he was

assaulted.  (Obj. at 7-15.)  Next, Defendants contend that the motion for summary judgment encompassed Butler's deliberate indifference claim, and that the claim should be dismissed because Butler was not assaulted and he therefore did not suffer an injury to which Defendants were deliberately indifferent.  (Id. at 15-16.)

## A. Is there a Genuine Issue of Material Fact?

Defendants correctly note that "when it is apparent that no rational trier of fact could find in favor of the nonmoving party because the evidence to support its case is so slight . . . summary judgment [should] be granted."  Shabazz, 994 F. Supp. at 466-67.  As explained by the Supreme Court in Scott v. Harris, "the mere existence of *some* factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  550 U.S. 372, 380 (2007).  A genuine issue of material fact requires the nonmoving party to "offer some hard evidence showing that its version of the events is not wholly fanciful."  D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).  But "not wholly fanciful" is a low threshold, and to prevail on a motion for summary judgment, the moving party bears a "difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the [nonmoving party's] favor."  Jefferys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).  Thus, "[w]hile courts have granted summary judgment based on the incredulity of a plaintiff's testimony, they have done so sparingly."  Rossi v. Stevens, No. 04-CV-01836(KMK), 2008 WL 4452383, at *6 (S.D.N.Y. Sept. 30, 2008); see Slacks v. Gray, No. 9:07-CV510(NAM/GJD), 2009 WL 3164782, at &1 (N.D.N.Y. 2009).

Defendants fault Magistrate Judge Katz for placing any weight on the fact that they have not submitted affidavits relating their version of events.  (Obj. at 8.) Defendants argue that in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) the Supreme Court "held that a motion for summary judgment cannot be denied on the basis that moving defendants have not submitted affidavits."  (<u>Id.</u>)   In <u>Celotex</u>, however, the Court explained that "regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should be granted so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  477 U.S. at 232.  Magistrate Judge Katz recommends denying the motion for summary judgment because he believes that the evidence does not "satisfy the standard for entry of summary judgment," not because Defendants have failed to submit affidavits.  Defendants' decision to stand mute does, however, leave Butler's testimony that he was assaulted as the only direct evidence as to whether the assault in fact occurred.  Moreover, Defendants have not submitted affidavits by Simpson, Dr. Bahski or the nurses who examined Butler in the days following the alleged assault.  Without such evidence – which Defendants presumably believe would show that Butler did not suffer an eye injury on January 2 – the Court is hard pressed to conclude that Butler's deposition testimony is "wholly fanciful."

In the Complaint and Amended Complaint, Butler alleges that he "stripped naked" before the January 2 assault.  During his deposition, however, Butler testified that he stripped down to his "boxers and T-shirt."  Contrary to Magistrate Judge Katz's conclusion that this discrepancy goes only to Butler's credibility, Defendants "believe that it fundamentally undermines his claim."  (Obj. at 8.)  The Court disagrees.  This

minor inconsistency between Butler's pleadings and his deposition testimony does not

render Butler's testimony incredible.  Defendants may find the inconsistency useful for

impeachment purposes at trial, but it is not grounds for granting them summary

judgment.  See Jeffreys, 436 F.3d at 554 ("it is undoubtedly the duty of district courts not

to weigh the credibility of the parties at the summary judgment stage.").

      Defendants' main argument is that because there is no evidence that Butler

received treatment for an injury to his right eye at any point after January 2, 2009, no

rational factfinder could conclude that he was assaulted.  Defendants strenuously object

to Magistrate Judge Katz's reliance on the Aftercare Instructions as evidence

corroborating Butler's testimony that his right eye was injured during the assault.  (Obj.

at 11-13.)  Since the underlying medical records from Butler's July 11 visit to the WMC

emergency room indicate treatment for a pinky injury, Defendants contend that the Court

should credit Dr. Madore's explanation that the portion of the Aftercare Instructions

referring to "facial & scalp contusions" is the result of an errant click of the computer

mouse.

      But Dr. Madore does not claim to be the WMC employee who printed out the

Aftercare Instruction on January 11, 2009.  Nor does she claim to recall whether Butler in

fact had – as the Aftercare Instructions state – "a contusion (deep bruise) around the face

or scalp."  Indeed, Dr. Madore does not contend that she was the doctor who treated

Butler on January 11, 2009.  In other words, Dr. Madore's declaration is conjecture and

surmise.  Of critical import, Butler filed his grievance at Sing Sing complaining about the

assault *before* his January 11 visit to WMC.  In his grievance, Butler alleged that he was

assaulted by Defendants and "got knocked in the eye."  (Butler Dep. at 72.)  Defendants

cannot argue, therefore, that Butler decided to spin a tale about the assault after receiving the Aftercare Instructions. Cf. Vatansever v. New York City, No. 01 Civ. 11621, 2005 WL 2396904, at *3 (S.D.N.Y. 2005) (granting summary judgment to corrections officers on excessive force claim because inmate's "medical records . . . reflect that he did not complain of head injuries or mention the alleged assault until two months after it occurred."). Since Butler complained of the assault prior to the creation of the Aftercare Instruction, Defendants' attempt to chalk the Aftercare Instructions up to a clerical error is simply too convenient.

The Second Circuit has cautioned that "where a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak." Goord, 544 F.3d at 269. As Magistrate Judge Katz explained, Butler will have serious difficulty convincing a jury that he received sutures in his right eye on January 6, 2009. Even assuming Butler did not receive sutures as he claims, however, his testimony regarding the assault is not so fanciful that no reasonable jury could accept it. From the date he filed his grievance, through the present, Butler has told the same story: Gonzalez attacked him without provocation while Richard stood idly by. This story is corroborated – at least in part – by the Aftercare Instructions and by Butler's previously filed grievance. There is no direct evidence contradicting Butler's testimony that he was gratuitously beaten on January 2, 2009, and Defendants have failed to show that Butler's "version of events is so utterly discredited that no reasonable jury could . . . believe

him." <u>Scott</u>, 550 U.S. at 380.  Defendants' motion for summary judgment on the excessive force claim is accordingly denied.

**B. Scope of the Motion for Summary Judgment**

Defendants also object to Magistrate Judge Katz's conclusion that they did not move for summary judgment on Butler's Eighth Amendment deliberate indifference to a serious medical need claim.  (Obj. at 15-16.)  The objection is meritless.  Defendants' briefing in support of the motion for summary judgment focuses exclusively on Butler's excessive force claim, and the standard applicable to Eighth Amendment deliberate indifference claims is nowhere to be found.  Defendants do not so much as mention "denial of medical care."

In any event, Defendants argument for dismissal of the deliberate indifference claim is unpersuasive.  Defendants contend that because the assault did not occur, "plaintiff did not suffer from an 'objectively, sufficient serious' medical condition for which defendants could have been deliberately indifferent within the meaning of the Eighth Amendment."  (Obj. at 16.)  As explained, there are disputed questions of fact as to whether the assault occurred and the extent of Butler's injuries.  Since Butler testified that he pleaded with Defendants for medical care to no avail, Defendants are not entitled to summary judgment on Butler's deliberate indifference claim.  <u>See</u> <u>generally</u> <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998) (elements of deliberate indifference to serious medical needs claim under the Eighth Amendment); <u>Pizzuto v. Cnty. of Nassau</u>, 239 F. Supp. 2d 301, 311 (E.D.N.Y. 2003) (leaving prisoner without medical attention after beating amounts to deliberate indifference under the Eighth Amendment).

## Conclusion

For the foregoing reasons, the Court accepts and adopts the Report and

Recommendation as its opinion. Defendants' motion for summary judgment is DENIED.

The Clerk of Court is directed to close the motion at docket number 21. The order of

reference stands and the parties should proceed as directed by Magistrate Judge Katz.

Dated: New York, New York
       August 26, 2010

SO ORDERED

PAUL A. CROTTY
United States District Judge

Copies Mailed By Chambers To:

Magistrate Judge Theodore H. Katz, Chambers 1660

Willie Butler
875-10-01637
Rikers Island Correctional Facility
R.N.D.C.
11-11 Hazen Street
East Elmhurst, NY 11370

Donald Nowve
Office of New York State Attorney General
120 Broadway, 24th Floor
New York, NY 10271